UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ESTATE OF RAYMOND J. HERBST, III, by SUSAN HERBST, Personal Representative,  )<br>)<br>)<br>Plaintiff,     )<br>)<br>vs.       )<br>)<br>THE STANDARD FIRE INSURANCE  )<br>COMPANY,     )<br>)<br>Defendant.    ) | Case No. 4:23CV201 RHH |

### **MEMORANDUM AND ORDER**

This matter is before the Court on Defendant The Standard Fire Insurance Company's Motion to Dismiss for Failure to State a Claim, filed February 27, 2023. (ECF No. 8). The motion is fully briefed and ready for disposition.

### **BACKGROUND**[1]

On March 28, 2022, Raymond J. Herbst, III ("Mr. Herbst") was a passenger in a motor vehicle being driven by Lisa Milton ("Ms. Milton"), when it was struck by a vehicle driven by Chelsea Webster ("Ms. Webster").[2] (Petition for Breach of Contract and Vexatious Refusal to Pay (hereinafter "Complaint" or "Compl."), ¶¶ 4, 5; Defendant's Response to Plaintiff's Demand, attached to Defendant's Motion to Dismiss as Exh. C, P. 1).[3] Ms. Webster was solely at fault for the accident. (Compl., ¶ 6).

---

[1] Portions of the Court's background section are taken from Plaintiff's Complaint, to which Defendant has not yet filed an answer.
[2] The vehicle in which Mr. Herbst was a passenger was owned by Ms. Milton, and insured by Bristol West. (Defendant's Exh. C, P. 1).
[3] "[D]ocuments necessarily embraced by the complaint may be considered in ruling on a Rule 12(b)(6) motion to dismiss." *Ryan v. Ryan*, 889 F.3d 499, 505 (8th Cir. 2018) (internal quotation

- 1 -

At the time of the accident, Ms. Webster was covered by an automobile liability insurance policy with bodily injury limits in the amount of $100,000 per person. (Compl., ¶ 7). With the consent of Defendant, Mr. Herbst settled his claims against Ms. Webster for the bodily injury limits of $100,000, and therefore, all applicable liability limits have been exhausted. (*Id.*, ¶ 12). Mr. Herbst sustained damages in excess of $200,000, however. (*Id.*, ¶ 11).[4]

At the time of the accident, Mr. Herbst was insured under Policy Number 603793931-203-1 ("Policy"), issued by Defendant The Standard Fire Insurance Company, and effective from February 5, 2022, to February 5, 2023. (Compl., ¶ 13). The Policy includes coverage for underinsured motorist protection in the amount of $100,000 per person, for which Mr. Herbst paid a separate premium. (*Id.*, ¶ 14; Policy, attached to Defendant's Motion to Dismiss as Exh. A, P. 2[5]). "Underinsured motor vehicle" is defined as "a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident but the amount paid for 'bodily injury' under that bond or policy to an 'insured' is not enough to pay the full amount the 'insured' is legally entitled to recover as damages." (Policy, P. 23). The Policy further contains a Named Driver Exclusion ("NDE") Endorsement, stating as follows: "With respect to all coverages under this policy, we will not pay damages, expenses or loss arising out of the maintenance or use of

---

marks and citation omitted). "This includes documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Id.* (internal quotation marks and citations omitted).
4 According to Plaintiff, Mr. Herbst suffered the following injuries: "a 'hangman's fracture' of his neck at the C-2 level and resulting injuries to his bones, muscles, cartilage, ligaments, tendons, blood vessels, membranes, nerves and tissues adjoined and affixed thereto, all of which required the installation of 'Halo' device to stabilize his spine. [He] suffered from extreme pain and also suffered impairment and restrictions in his strength and ability of his entire body." (Compl., ¶ 8). Mr. Herbst further incurred medical expenses in excess of $67,000. (*Id.*, ¶ 9).
5 In citing to the Policy, the Court uses the page numbers as delineated through the Court's electronic case filing system.

any auto or trailer while operated by the 'Named Excluded Driver'." (*Id.*, P. 32).  Lisa Milton is a Named Excluded Driver under the Policy.  (*Id.*).[6]

On or about October 5, 2022, Plaintiff submitted a claim for benefits pursuant to the underinsured motorist bodily injury coverage of the Policy.  (Compl., ¶ 18; Plaintiff's Demand, attached to Defendant's Motion to Dismiss as Exh. B).  Defendant denied the claim on November 8, 2022, on the basis that coverage was precluded by the NDE Endorsement.  (Compl., ¶ 19; Defendant's Exh. C).  Plaintiff exhausted her administrative remedies with Defendant by filing an appeal of the denial, which was also denied.  (Defendant's Exhs. D, E).

On or about January 18, 2023, Plaintiff initiated this action by filing a Complaint in the Circuit Court of Franklin County, Missouri.  (ECF No. 4).  Defendant removed the case to this Court on February 20, 2023, on the basis of diversity jurisdiction.  (ECF No. 1).  As noted above, Defendant filed the instant Motion to Dismiss for Failure to State a Claim on February 27, 2023, claiming the Policy excludes coverage for injuries sustained in the manner at issue here.  (ECF No. 8).

## **STANDARD FOR MOTION TO DISMISS**

In ruling on a motion dismiss, the Court must view the allegations in the complaint in the light most favorable to Plaintiff.  *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008).  The Court, "must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party."  *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005) (citation omitted).  The Complaint's factual allegations must be sufficient "to raise a right to relief above the speculative level," however, and the motion to dismiss must be granted if the Complaint does not contain "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic*

---

[6] Plaintiff does not dispute that the Policy excludes coverage for Ms. Milton, the Named Excluded Driver.

*Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (abrogating the "no set of facts" standard for Fed.R.Civ.P. 12(b)(6) found in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Furthermore, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555 (pleading offering only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not do)).

## DISCUSSION

In its Motion to Dismiss, Defendant asserts the Policy precludes all coverage, including underinsured motorist ("UIM") coverage, if Ms. Milton is operating the vehicle at the time of loss. As noted above, the Policy contains an NDE Endorsement, stating as follows: "With respect to all coverages under this policy, we will not pay damages, expenses or loss arising out of the maintenance or use of any auto or trailer while operated by the 'Named Excluded Driver'." (Policy, P. 32). Lisa Milton is a Named Excluded Driver under the Policy. (*Id.*). Defendant thus maintains that "[u]nder settled Missouri law, and under the weight of authority nationwide, the NDE Endorsement in the Standard Fire Policy excludes coverage for Plaintiff's UIM claim as a matter of law." (Defendant's Motion to Dismiss, P. 2).

"Under Missouri law, applicable in this diversity case, [t]he interpretation of the meaning of an insurance policy is a question of law." *Capitol Indem. Corp. v. 1405 Associates, Inc.*, 340 F.3d 547, 549 (8th Cir. 2003) (internal quotation marks and citation omitted). Further, "'[a]bsent an ambiguity, an insurance policy must be enforced according to its terms.'" *Wyland v. Hartford Life Ins. Co.*, 210 F.Supp.3d 1164, 1167 (E.D. Mo. 2016) (quoting *Lang v. Nationwide Mut. Fire Ins. Co*, 970 S.W.2d 828, 830 (E.D. Mo. 1998) (citation omitted)). "An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy." *Taylor v. Bar*

*Plan Mut. Ins. Co.*, 457 S.W.3d 340, 344 (Mo. banc 2015) (citing *Burns v. Smith*, 303 S.W.3d 505, 509 (Mo. banc 2010)).  A court may not create an ambiguity in order to distort the language of an unambiguous policy and enforce a construction it feels is more appropriate.  *Id.*  "Thus, where insurance policies are unambiguous, they will be enforced as written absent a statute or public policy requiring coverage." *Progressive Northwestern Ins. Co. v. Talbert*, 407 S.W.3d 1, 9 (Mo. App. 2013) (internal quotation marks and citations omitted).

In her response Plaintiff first contends the language of the NDE Endorsement is ambiguous, particularly as it pertains to an absence of coverage when the damages, expenses or loss *arise out of* the maintenance or use of a vehicle while operated by Ms. Milton.  Under Missouri insurance law, "'arising out of' has been interpreted 'to be a very broad, general and comprehensive phrase' meaning 'originating from' or 'having its origins in' or 'growing out of' or 'flowing from.'" *Capitol Indem. Corp.*, 340 F.3d at 550 (quoting *Colony Ins. Co. v. Pinewoods Enters., Inc.*, 29 F.Supp.2d 1079, 1083 (E.D. Mo. 1998) (citations and quotations omitted)).  "When this phrase is used, as it is in the relevant Policy exclusion, the applicable causation standard is not the strict 'direct and proximate cause' standard applicable in general tort law." *Id.* (citations omitted).  Instead, "[i]nsurance contracts containing this language….only require that the insurer show a causal relationship between the excluded cause and the injury." *Safeco Ins. Co. of Am. v. Yount*, No. 4:19-CV-890-MTS, 2020 WL 6445840, at *2 (E.D. Mo. Nov. 3, 2020) (citations omitted).

Upon consideration of the foregoing, the Court finds such a relationship exists here.  In other words, there exists a causal relationship between the excluded cause, *i.e.*, Ms. Milton's driving, and the injuries suffered by Mr. Herbst.  The unambiguous terms of the Policy thus preclude coverage under the circumstances present here.  *See Capitol Indem. Corp.*, 340 F.3d at 550.

Plaintiff next asserts Defendant's enforcement of the NDE Endorsement violates public policy under the circumstances of this case.  The Missouri Court of Appeals considered an excluded

driver endorsement in *White v. Illinois Founders Ins. Co.*, 52 S.W.3d 597 (Mo. App. 2001). In that case, Thornton White, Sr. ("Husband") was involved in an accident with an uninsured driver while operating his own motor vehicle. The uninsured driver was found to be 100% at fault. After collecting the maximum amount of uninsured motorist coverage from his own policy, Husband applied for uninsured motorist benefits under Ethel White's ("Wife") policy with Illinois Founders. Wife's policy provided in relevant part as follows: "ALL coverage afforded by this policy is void and shall not apply to any claim or suit which occurs as the result of any auto being operated by the following person(s): THORNTON WHITE SR." *Id.* at 598. Illinois Founders denied coverage, and the Whites filed a declaratory judgment action alleging the endorsement violated the public policy of Missouri. The trial court entered judgment in favor of Illinois Founders.

On appeal, the Missouri Court of Appeals first found that the endorsement was not ambiguous, and unequivocally excluded Husband from any coverage whatsoever. The Court then turned to the Whites' assertion that the excluded driver endorsement was unenforceable because it violated the public policy embodied in the uninsured motorist statute, Mo.Rev.St. § 379.203.1. *White*, 52 S.W.3d at 599. The Court noted that "[a]n insurance clause violates public policy and is rendered unenforceable only to the extent it violates the Motor Vehicle Financial Responsibility Law (MVFRL), Chapter 303 RSMo 1994." *Id.* (citation omitted). It continued as follows:

> The uninsured motorist statute, section 379.203 RSMo 1994, requires only that all policies of liability insurance must also include uninsured motorist coverage to "persons insured thereunder." Inasmuch as Husband is unequivocally excluded as an insured by the express terms of the Excluded Driver(s) Endorsement to Wife's policy and there is no requirement in the MVFRL that Wife's owner's policy of liability extend liability coverage to persons owning, using or maintaining a vehicle other than the vehicle specified in her policy, there is likewise no requirement that Wife's policy extend uninsured motorists coverage for damages resulting from the ownership, use or maintenance of such other vehicles.

*Id.* at 600 (internal citations omitted).[7] The Court in *White* therefore held that "because nothing in the MVFRL required Wife's owner's policy of insurance to extend liability coverage to Husband with respect to liability arising out of his use of his own vehicle, enforcement of the Excluded Driver(s) Endorsement to deny him uninsured motorist coverage for damages arising out of his use of his own vehicle does not violate the MVFRL or section 379.203 and does not contravene public policy." *Id.*

Ten years after the decision in *White*, the Missouri Court of Appeals again addressed a named driver exclusion in *Yates v. Progressive Preferred Ins. Co.*, 331 S.W.3d 324 (Mo. App. 2011).  In that case, the plaintiff ("Yates") was driving a motorcycle when it collided with an automobile driven by Roberta Pechey ("Roberta").  Roberta, who had a valid learner's permit, was operating the motor vehicle with the full knowledge and consent of her husband, Steven Pechey ("Steven").  Progressive had issued a policy of insurance on the vehicle, listing Steven as a named insured.  The policy contained a named driver exclusion endorsement, naming Roberta as an excluded driver.

Yates filed suit for recovery of personal injury damages sustained in the collision.  Although the policy had liability limits of $50,000 per person and $100,000 per accident, Progressive informed Yates the policy did not provide coverage for the accident.  Yates eventually obtained a judgment against Roberta in the amount of $100,000, and filed a petition in inequitable garnishment against Progressive.  The trial court granted Progressive's motion for summary judgment, finding that Roberta was an excluded driver under the policy.

---

[7] The Court cited with approval *Lair v. American Family Mut. Ins. Co.*, 789 S.W.2d 30 (Mo. banc 1990), in which the Missouri Supreme Court held that "section 379.203 only required extension of uninsured motorist coverage to persons insured under the terms of the liability policy…" *White*, 52 S.W.3d at 601.

On appeal, Yates argued that the named driver exclusion in the policy violated public policy and conflicted with the MVFRL, Mo.Rev.St. § 303.190.  The MVFRL requires all automobile liability insurance policies to "insure the person named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of such motor vehicle…" Mo.Rev.St. § 303.190.2(2).[8]  It further states that liability insurance policies "[m]ay exclude coverage against loss from liability imposed by law for damages arising out of the use of such motor vehicles by a member of the named insured's household who is a specifically excluded driver in the policy." Mo.Rev.St. § 303.190.2(3).  The Court found that "Section 303.190.2(2), which requires *every* liability policy to cover *any driver* of a covered vehicle having the permission of the named insured, and section 303.190.2(3), which allows a named insured to exclude a named driver from coverage under a policy, are seemingly in tension." *Yates*, 331 S.W.3d at 327 (emphasis in original).

The Court in *Yates* found the decision in *White* was not dispositive, "as it applied the pre-amendment version of the MVFRL and did not, therefore, have an opportunity to analyze the effect of subsection (3) on subsection (2) of section 303.190.2."[9]  *Yates*, 331 S.W.3d at 329 (citation omitted).  The Court continued as follows:

> Moreover, *White* noted that a policy exclusion might be partially enforceable, to the extent that coverage was not required by the MVFRL, even though it might be invalid if applied to exclude *liability* or uninsured motorist coverage for operation of [an] insured vehicle which was required by the MVFRL. *White,* therefore, stands for

---

[8] In 2015, the Missouri Supreme Court reaffirmed that the purpose of the MVFRL "'is to ensure that persons injured on Missouri's highways, whether they be owners, operators, occupants of the insured's vehicle, occupants of other vehicles, or pedestrians, may collect at least minimal damage awards against negligent motor vehicle operators." *Dutton v. American Family Mut. Ins. Co.*, 454 S.W.3d 319, 323 (Mo. banc 2015) (quoting *Am. Standard Ins. Co. v. Hargrave*, 34 S.W.3d 88, 90 (Mo. banc 2000)).
[9] The amendment provided in § 303.190.2(3) was enacted after the action in *White* occurred. *White,* 52 S.W.3d at 601 n. 3.

the proposition that a policy exclusion is enforceable only to the extent that it is consistent with the provisions and purpose of the MVFRL.

*Id.* (alterations in original) (internal quotation marks and citations omitted). The Court agreed with the general principle announced in *White*, but found it "does nothing to shed light on how the addition of section 303.190.2(3) affects the requirements and purpose of the MVFRL." *Id.*

Finding no Missouri case law giving clear instruction as to the appropriate application of § 303.190.2(3), the Court of Appeals turned to cases from other states for guidance. It found that "[o]ther states with statutes similar to Missouri's, allowing named driver exclusions in policies, have interpreted these statutes as allowing insurance companies to *deny any coverage* where a named excluded driver was operating the covered vehicle."[10] *Yates*, 331 S.W.3d at 330 (emphasis in original) (citations omitted). Courts in states allowing named driver exclusions to exclude all coverage for accidents involving the named excluded driver usually emphasized the public policy favoring those provisions, as follows:

> Policies with named driver exclusions enabl[e] drivers with family members having poor driving records to procure affordable insurance, rather than obtaining coverage from an assigned risk pool at a greater cost or not securing insurance at all. Additionally, because these policy exclusions subject automobile owners to personal liability, they deter these owners from negligently entrusting their automobiles to unsafe excluded drivers, which helps to keep these drivers off of the roads.

*Id.* at 330-31 (alteration in original) (internal quotation marks and citations omitted).

The Missouri Court of Appeals in *Yates* ultimately found the cases allowing insurance companies to deny all coverage when a named excluded driver was operating the vehicle to be persuasive. *Yates*, 331 S.W.3d at 331. It explained that while the purpose of the MVFRL prior to the enactment of § 303.190.2(3) was to ensure that persons injured on Missouri highways may

---

10 Although the *Yates* court initially referenced cases in which the named excluded driver was driving the "covered vehicle", it later broadened its pronouncement to states allowing named driver exclusions to exclude all coverage for accidents involving the named excluded driver. *Yates*, 331 S.W.3d at 330.

collect at least minimal damages against negligent motor vehicle operators, the amendment evidences another important purpose of the law, that is, "to encourage all owners to obtain coverage by removing an impediment to obtaining coverage and to encourage owners not to allow uninsured drivers to operate their vehicles." *Id.*

Finally, in *Alfa Specialty Ins. Co. v. Ellis*, No. 11-6118-CV-SJ-HFS, 2013 WL 4833472 (W.D. Mo. Sept. 10, 2013), the United States District Court for the Western District of Missouri considered the application of a named driver exclusion to a claim for uninsured motorist coverage. In that case, both the driver and a passenger were killed as the result of a motor vehicle accident in which the driver was an excluded driver operating the covered vehicle. The parties agreed the policy's liability coverage excluded coverage for the driver, and that the passenger normally would have "categorical insured status in the uninsured motorist provisions." *Alfa Specialty*, 2013 WL 4833472, at *2. The Court held that because the policy clearly and comprehensively stated there was no coverage "'for any claim arising from an accident…involving a motorized vehicle being operated by an excluded driver'", however, there existed no ambiguity, and by "seeking to confine the named driver exclusion to provisions other than the uninsured motorist coverage, claimant is seeking to impose a limitation that does not appear in the policy." *Id.* at *6. The Court continued:

> Even if I should acknowledge some degree of ambiguity, a fair reading of the policy would, in my judgment, give controlling effect to the specific language applying to [the driver's] conduct rather than trying to read something favorable to claimant in the general language that appears elsewhere. I believe a Missouri court would so rule, particularly when the public policy questions have been dealt with in the *Yates* case, giving ungrudging effect to the latest statute that allows the exclusion on which Alfa relies.

*Id.*

This Court recognizes that none of the above cases involves the fact pattern presented here, *i.e.*, the estate of an insured motorist attempting to collect underinsured motorist coverage from his own policy, for damages arising out of an accident in which he was a passenger in a non-covered

vehicle, owned, operated and insured by an excluded driver who was not at fault.  Plaintiff urges the Court to find that denying coverage in such a scenario violates the public policy of Missouri.[11]

"'When a federal court sits in diversity, it must apply the governing precedent from the state's highest court, and when there is no case directly on point, the federal court must predict how the state supreme court would rule if faced with the same question.'"  *Russo v. Frasure*, 371 F.Supp.3d 586, 589 (E.D. Mo. Oct. 29, 2018) (quoting *Jordan v. Safeco Ins. Co. of Ill.*, 741 F.3d 882, 887 (8th Cir. 2014)).  "Decisions by the Missouri Court of Appeals may be used as an indication of how the Missouri Supreme Court may rule, but [the Court is] not bound to follow these decisions."  *Burger v. Allied Property and Cas. Ins. Co.*, 822 F.3d 445, 447 (8th Cir. 2016) (internal quotation marks and citation omitted).

As noted above, in Missouri "[a]n insurance clause violates public policy and is rendered unenforceable only to the extent it violates the Motor Vehicle Financial Responsibility Law (MVFRL), Chapter 303 RSMo 1994."  *White*, 52 S.W.3d at 599 (citation omitted); *see also Yates*, 331 S.W.3d at 326.  The Missouri Court of Appeals has held that allowing an insurance company to deny all coverage when a named excluded driver was operating the vehicle does not violate public policy.  *Yates*, 331 S.W.3d at 331.  Further, a Federal Court in this State expanded the *Yates* holding to support the denial of uninsured motorist coverage.  *See Alfa Specialty*, 2013 WL 4833472, at *6.

This Court thus must consider whether Missouri law supports the expansion of the holding in *Yates* to the arena of underinsured motorist coverage.  In *Naeger v. Farmers Ins. Co., Inc.*, 436 S.W.3d 654 (Mo. App. 2014), the Missouri Court of Appeals considered whether denying UIM coverage (under a different set of facts) violated public policy.  The Court described UIM coverage

---

[11] Plaintiff cites no Missouri cases holding that public policy dictates an insurance company must provide underinsured motorist coverage in situations such as that at issue here.  While Plaintiff does cite cases from other jurisdictions that would support a finding in her favor, the Court recognizes a dissimilarity between the Missouri statute and the statutes of those other states.  *Miller by and*

as follows: "UIM coverage…refers to coverage intended to provide a source of recovery for insureds (up to the insurer's liability limit for such coverage) who have been bodily injured by a negligent motorist whose own automobile liability insurance coverage is insufficient to fully pay for the injured person's actual damages….It has been said that UIM coverage is floating, personal accident insurance that follows the insured individual wherever he goes rather than insurance on a particular vehicle." *Naeger*, 436 S.W.3d at 661 (internal quotation marks and citations omitted). The Court recognized that "the exclusions in the Policy make coverage dependent on the vehicle and does not follow the insured, rendering the exclusions contrary to the very nature of UIM coverage." *Id.* at 662. However, "'Missouri does not require [underinsured motor vehicle] coverage either by statute or by public policy,' and thus 'the contract between the insured and the insurer defines and limits coverage.'" *Travis v. State Farm Mut. Auto. Ins. Co.*, 581 F.Supp.3d 1174, 1180 (E.D. Mo. 2022) (quoting *Long v. Shelter Ins. Cos.*, 351 S.W.3d 692, 696 (Mo. App. 2011)). The *Naeger* Court thus concluded as follows:

> Due to the lack of public policy to the contrary, exclusions to UIM coverage are enforceable in Missouri absent an ambiguity in the contract language. Only when there is an ambiguity, will a contested provision be resolved consistent with the insured's objective and reasonable expectations as to what coverage would be provided. Here, neither the Other Insurance Clause nor the contract as a whole are ambiguous…While the exclusions in the Policy are contrary to common sense and the consuming public's general understanding of underinsured motorist coverage, the exclusions are enforceable under the current state of Missouri law.

*Id.* (internal citations omitted).

Upon consideration of the foregoing, this Court predicts the Missouri Supreme Court would uphold the unambiguous NDE Endorsement in this case, and deny underinsured motorist coverage to Plaintiff. Defendant's Motion to Dismiss must therefore be granted.

---

*through Haney v. Silvey Cos.*, 610 F.2d 565, 566 (8th Cir. 1979).

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant The Standard Fire Insurance Company's Motion to Dismiss for Failure to State a Claim (ECF No. 8) is **GRANTED**, and Plaintiff's claims are dismissed with prejudice. An appropriate Order of Dismissal will accompany this Memorandum and Order.

Dated this 24th day of April, 2023.

                                                  RODNEY H. HOLMES
                                                  UNITED STATES MAGISTRATE JUDGE